1     UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF TEXAS
2              HOUSTON DIVISION

3

4   AETNA LIFE INSURANCE          *     12-CV-1206
    COMPANY
5                                 *     Houston, Texas
    VS.                           *
6                                 *     9:40 a.m.
    HUMBLE SURGICAL HOSPITAL      *     January 7, 2014
7

8                      CONFERENCE

9

        BEFORE THE HONORABLE LYNN N. HUGHES
10           UNITED STATES DISTRICT JUDGE

11

    **APPEARANCES:**
12
    **FOR THE PLAINTIFF:**
13  John Bruce Shely, Brian C. Pidcock and
    Dena Hanovice Palermo
14  **ANDREWS KURTH, LLP**
    600 Travis, Suite 4200
15  Houston, Texas 77002
    713.220.4105
16

17  **FOR THE DEFENDANT:**
    Brian Douglas Melton, Melissa Leanne Downey and
18  Jonathan J. Ross
    **SUSMAN GODFREY, LLP**
19  1000 Louisiana St., Suite 5100
    Houston, Texas 77002-5096
20  713.653.7825

21
    Court Reporter:
22  Johnny C. Sanchez, RPR, RMR, CRR
    515 Rusk, #8004
23  Houston, Texas 77002
    713.250.5581
24
    Proceedings recorded by mechanical stenography.  Transcript
25  produced by computer-assisted transcription.

1          THE COURT:  Thank you.  Please be seated.

2              Mr. Melton, would you like to resume from

3  your seat?  Just pull that microphone to you.

4          MR. MELTON:  Yes, Your Honor.

09:40:04   5          THE COURT:  Pull it gently because they've got

6  it tethered.  It may need to be closer than that.

7          MR. MELTON:  Is this fine, Your Honor?

8          THE COURT:  Yes, sir.

9          MR. MELTON:  Your Honor, we were discussing

09:40:21  10  last week, they raised the merits of the summary judgment

11  motion, the striking my answer, and the enjoining of their

12  lawsuits.  And I'd like to proceed in addressing it to

13  those.

14          THE COURT:  All right.  Just pick up where you

09:40:37  15  left off.

16          MR. MELTON:  The -- where we were was it was

17  said that the filing of a Connecticut action on defamation

18  liable --

19          THE COURT:  I know what they're about.  I read

09:40:52  20  the complaints.

21          MR. MELTON:  And they want to either strike our

22  answer our cases --

23          THE COURT:  I know that.  You just said that --

24          MR. MELTON:  Yes, Your Honor.

09:41:00  25          THE COURT:  -- 30 seconds ago.

1           MR. MELTON:  The injunction is inappropriate.

2    The 5th Circuit in a case. --

3           THE COURT:  Wait.  Wait.  Tell me why it's

4    inappropriate as reasoning.  I don't know anything about

09:41:15    5    the case that you're wanting to quote from.  I have to know

6    the facts of that case.

7           MR. MELTON:  The reasoning --

8           THE COURT:  But what is unreasonable about

9    prohibiting Humble from going around filing identical

09:41:33    10    lawsuits?

11           MR. MELTON:  Your Honor, first, we don't

12    believe they're identical.

13           THE COURT:  I don't care what you believe,

14    Mr. Melton.  They're all -- your own words were used by the

09:41:44    15    other lawyer.

16           MR. MELTON:  Your Honor --

17           THE COURT:  They're identical, they arise out

18    of a common nucleus of fact.

19           MR. MELTON:  Your Honor --

09:41:53    20           THE COURT:  They arise out of a common nucleus

21    of fact.

22           MR. MELTON:  Your Honor --

23           THE COURT:  The defamation suit arose out of

24    conduct in this case about what Aetna was doing about this

09:42:06    25    case.  It's about what they discovered -- not in the

1  technical sense -- but in the stumble over it and then

2  force you to disclose it Humble.  All of that arose in

3  connection with this case.

4          MR. MELTON:  There are other conduct, the

09:42:32  5  sending of the letters, the calling of patients, the actual

6  allegations of facts for the liable slander case are not

7  part of the cause of action in this case.

8          THE COURT:  But --

9          MR. MELTON:  That happened after this case was

09:42:44  10  filed.  They admit --

11          THE COURT:  Because of what was learned what

12  was suspected -- and I think basically they knew in a

13  practical sense -- but it was absolutely verified, and they

14  acted on it in their business.

09:43:08  15          Last week, Mr. Melton, I discussed with you

16  the problems with that suit on the merits.  The problem

17  with it is it's a way to throw sand in the gears, if not a

18  dead cat in the dining room, in order to gum up Aetna's

19  attempt to resolve what was going on with Humble's claims

09:43:39  20  to it.

21          MR. MELTON:  Your Honor, it doesn't impact at

22  all your ability to resolve this lawsuit on the causes of

23  action in front of you.  That case will not impact this

24  Court's ability to do anything on the class --

09:43:57  25          THE COURT:  Why is it filed in Connecticut?

1          MR. MELTON:  Your Honor, it's a state court

2  action --

3          THE COURT:  Wait a minute.  Wait a minute.

4          MR. MELTON:  The defendant --

09:44:05   5          THE COURT:  I asked you about the state.

6          MR. MELTON:  The defendant resides --

7          THE COURT:  Why is it filed in Connecticut?

8          MR. MELTON:  The defendant resides in

9  Connecticut and it provides a good basis for jurisdiction

09:44:15   10 in venue.

11          THE COURT:  That is that you can.  That you're

12 able to do something, Mr. Melton, does not mean that you

13 should do it.  You could sue Aetna in all 50 states, the

14 District of Columbia, Guam, Samoa and Puerto Rico.  They're

09:44:36   15 everywhere.  That doesn't mean you should sue them there,

16 does it?

17          MR. MELTON:  Your Honor --

18          THE COURT:  Does it?

19          MR. MELTON:  Yes, we can sue them, and we

09:44:47   20 should have sued them there on defamation, liable and

21 slander.

22          THE COURT:  Mr. Melton, please.  Repeating

23 things does not make them more persuasive.  The witnesses

24 are here, the injury was here, the patients are here, two

09:45:16   25 sets of lawyers familiar with the case, the ones who dealt

1  with Aetna so they had the information to know to quit

2  using them as a provider.  All that stuff, those decisions,

3  those actions, all festered and then blossomed here.  Right

4  or wrong, it's a Houston problem.

09:45:50  5           MR. MELTON:  Your Honor, the decision to send

6  the letters, and the people who made that decision I don't

7  believe reside in Houston.

8           THE COURT:  I didn't say they resided here.

9           MR. MELTON:  They reside --

09:45:58  10          THE COURT:  I didn't say they resided here.

11  The ultimate authority.  But you don't know who made the

12  decision, and it doesn't matter because Aetna is here, it

13  is responsive here, and then you joined a class action in

14  New Jersey.  Why?

09:46:27  15          MR. MELTON:  Your Honor, it was a pending class

16  action, we --

17          THE COURT:  I didn't ask you why.  I said you

18  joined.  That means it's pending, doesn't it?

19          MR. MELTON:  We were putative members of the

09:46:39  20  proposed class, and our client did not want to lose control

21  of that class.  They decided to join it --

22          THE COURT:  Wait.  He can't control it anyway.

23  Your client is not going to control the class.  What do you

24  mean by, "He couldn't lose control of that class"?

09:46:54  25          MR. MELTON:  Your Honor, as a named class

1  representative, he certainly has more control over the

2  conduct of the class action than not.

3          THE COURT:  No.  But the lawyers have to

4  represent the class.  The named class member has to do it

09:47:18  5  in the best interest of the class, except for his tip.

6  That the lawyers representing the class have to do it in

7  the best interest of the class.  The people from Humble are

8  not going to be able to change.  What is the class,

9  everybody in America?

09:47:42  10          MR. MELTON:  Your Honor, it's --

11          THE COURT:  What is --

12          MR. MELTON:  -- facilities and providers who

13  were denied, and probably denied payment by Humble -- or by

14  Aetna.

09:47:58  15          THE COURT:  How do you know you belong there?

16          MR. MELTON:  Your Honor, my client and the

17  attorneys representing him, the class, have discussed it at

18  length, and that decision --

19          THE COURT:  And you discussed it.

09:48:18  20          MR. MELTON:  I was part of the conversations,

21  yes, Your Honor.

22          THE COURT:  Mr. Melton, I'm not sure you have

23  anything to add to this.  You weren't doing well here, the

24  obfuscation and recalcitrance finally did not avail -- I'm

09:48:59  25  not saying this very carefully -- Humble or you, so you

1  decided some more obstructive tactics to run up Aetna's

2  cost to file separate suites in two different states.

3          MR. MELTON:  Your Honor, may I respond to that?

4          THE COURT:  No.  You've had plenty of time to

09:49:28  5  respond to it, and your answers are:  We should do whatever

6  we're able to do, whether it is reasonable, efficient.

7          Thank you.  Next time bring a pizza and not

8  more work.  (Comments to unidentified person)

9          And I thought we already discussed the

09:50:11  10  sanctions aspect last week.

11          MR. MELTON:  Your Honor, we didn't discuss

12  whether an injunction was appropriate.  If nothing else, I

13  would like to cite to the Court two cases to review before

14  it makes a decision.

09:50:29  15          THE COURT:  Why don't you just hand up the

16  citation.

17          The *Great Lakes* case is about *Jones Act*

18  *Seamen*.  That hardly has any relevance to a bloodless

19  insurer.

09:51:52  20          MR. MELTON:  Your Honor, the point of that was

21  a discussion about the Anti-Injunction Act.  And it has --

22  the Anti-Injunction Act --

23          THE COURT:  Counsel, cases are authority based

24  on the cogency of their facts to the facts under

09:52:10  25  discussion.  There's no similarity, it's two parallel

1  actions about seamen's injuries.  Right?

2              MR. MELTON:  Yes, sir.

3              MR. SHELY:  Judge, these also --

4              THE COURT:  And neither one of these parties is

09:52:31  5  the least like seaman who are specifically beneficiaries of

6  a statute and are, in effect, wards of the Court.

7              MR. SHELY:  I agree with that, Your Honor.

8  Also, these cases appear to be -- which I've read them --

9  Anti-Injunction Act cases.  I've glanced at them.  We don't

09:52:50  10  have a state court proceeding here.  Connecticut action is

11  in federal court, the New Jersey action is in federal

12  court.  So they're really inapplicable with respect to what

13  they're citing, separate and apart with Jones Seamen.

14              MR. MELTON:  Your Honor --

09:53:04  15              MR. SHELY:  I should also let you know, Judge,

16  we filed yesterday in the Connecticut action a motion to

17  transfer the case, dismiss the case and transfer the case

18  down here.  And I'll provide a copy for the Court by notice

19  of filing.  I have an abbreviated copy if you'd like to see

09:53:14  20  it.

21              MR. MELTON:  Your Honor, we pled and filed a

22  motion to remand within the time limit allowed.  It's not

23  going to be a federal case forever.  It's going to be

24  remanded to state court.

09:53:29  25              THE COURT:  Really?  And how do you know that?

1            MR. MELTON:  Because, Your Honor, those are

2  state court causes of action that are not preempted by

3  ERISA, which is their basis for removal.

4            THE COURT:  The cause of action is the activity

09:54:02  5  that generates the lawsuit.  It is not the legal theory

6  that you choose to apply to the transaction.  And the

7  transaction was claims administration, wasn't it?

8            MR. MELTON:  No, Your Honor.

9            THE COURT:  The letters went to beneficiaries,

09:54:22  10  participants.

11            MR. MELTON:  That's a claims administration,

12  Your Honor.

13            THE COURT:  It's plan administration.

14            MR. MELTON:  No, Your Honor.  These things went

09:54:32  15  out to doctors, patients, businesses in the community that

16  have nothing to do with --

17            THE COURT:  Name --

18            MR. MELTON:  -- the surgical hospital.

19            THE COURT:  Name somebody who has nothing to do

09:54:45  20  with the plans Aetna is financing.

21            MR. MELTON:  I can provide those to the Court.

22            THE COURT:  Well, do it.

23            MR. MELTON:  Right now?  Let me check.  I know

24  they went out --

09:54:57  25            THE COURT:  Two years and right now, counsel.

1        MR. MELTON:  These letters just went out, Your

2  Honor.  I don't have that in front of me.  I know who --

3        THE COURT:  Well, then don't tell me I'm

4  supposed to rely on something that you can't be specific

09:55:13   5  about.  You know, even if it should be remanded, it doesn't

6  mean it will be.  Courts make mistakes, don't they?  But at

7  the moment it's a federal case.

8        MR. MELTON:  They removed to federal court,

9  yes, sir.

09:55:40  10        THE COURT:  Well, that's an artful restatement

11  of what I said.  The class hadn't even been certified?

12        MR. MELTON:  No, Your Honor.

13        THE COURT:  So there's nothing for Humble to

14  manage, is there?

09:56:31  15        MR. MELTON:  The certification process to start

16  with, Your Honor, yes.

17        THE COURT:  What else do you want to talk

18  about?

19        MR. MELTON:  The only other thing I would point

09:57:03  20  out is Aetna has gone outside the court also.  They filed

21  in state court against two doctors in state court that

22  Mr. Shely didn't bring up, pending in state court in Harris

23  County.  These same -- one of the same two doctors that was

24  originally involved in this case over two years ago, they

09:57:27  25  didn't proceed to bring that here.  And my point is --

1                   THE COURT:  Wait.  Wait.  Wait a minute.  Who

2  are these two doctors?

3                   MR. MELTON:  Dr. Solofala (phonetic) and

4  Dr. Blackwell.

09:57:46   5                   THE COURT:  And are they executives of Humble?

6                   MR. MELTON:  I believe they're both board

7  members.

8                   THE COURT:  Well, technically, that doesn't

9  mean --

09:57:59   10                   MR. MELTON:  They're doctors who perform

11  procedures at HSH.

12                   MR. SHELY:  Judge, we filed suit against the

13  doctor --

14                   THE COURT:  Wait.

09:58:06   15                   MR. SHELY:  Sorry.

16                   THE COURT:  Are they executives, or are they

17  policy makers?

18                   MR. MELTON:  Your Honor, they're on the board.

19  I don't know exactly --

09:58:15   20                   THE COURT:  Theoretically, the board should be

21  making policy and not be executives.  So they're both on

22  the board, both have independent -- both have independent

23  practices.

24                   MR. MELTON:  That is true.  I believe they're

09:58:30   25  on the board.

1          THE COURT:  Why would Aetna be obliged to bring

2    an action against somebody who submitted in his own name a

3    claim against Aetna here in a case which is about Humble's

4    overbilling, and if -- and misbilling it, however you want

09:59:04    5    to characterize it -- Aetna can sue one of the doctors,

6    then sue another doctor.  Those are individual claims

7    against the doctor, presumably his practice.

8              Are there cooperate defendants, Mr. Shely?

9          MR. SHELY:  Judge, yes.  We sued Dr. Blackwell

09:59:26    10    and Dr. Sofala (phonetic) .  And then their kickback

11    entity, Bad Back Surgical and Starlight (phonetic)

12    Surgical, remember?  And they were sent letters, they were

13    asked to disclose and disgorge.  They didn't.  They've been

14    sued in state court.  Yes, Judge.

09:59:42    15          THE COURT:  They don't have to bring all those

16    here.  This is about Humble's accounting problems with

17    Aetna, not about everybody's accounting problems, and not

18    everybody who has an accounting problem with Aetna because

19    they did things with Humble.

10:00:25    20          MR. MELTON:  Your Honor, to the extent the same

21    nucleus of facts would control that, that was the only

22    point.  I didn't say they were obligated to bring them

23    here.  Just like we're not obligated to bring the

24    defamation case --

10:00:40    25          THE COURT:  I'm not -- both these are

1    accounting cases, aren't they?  The Blackwell case and the

2    Humble case are both accounting cases, and they're both in

3    the same town, same state, same county.  Very parallel,

4    Mr. Melton.

10:01:15    5         MR. MELTON:  I don't understand what the Court

6    is asking, Your Honor.

7              THE COURT:  I didn't ask anything.  They're not

8    parallel.  What else?

9              MR. MELTON:  Your Honor, if you don't want me

10:01:53    10    to address that anymore, then I don't believe anything

11   else.

12             THE COURT:  If there's something new then --

13             MR. MELTON:  The agreements between Humble

14   Surgical Hospital and the physician and physician entities

10:02:10    15    is an issue in that state court case they brought.  They

16   specifically put it at issue.

17             THE COURT:  Just like the suit between the

18   other doctor in Humble.

19             MR. MELTON:  Are you referring to Dr. Siddiqui.

10:02:30    20         THE COURT:  Siddiqui apparently.  Palermo is

21   nodding.

22             MR. MELTON:  I'm not sure Dr. Siddiqui put that

23   agreement at issue in the case.

24             THE COURT:  That's where they got it.

10:02:42    25         MR. MELTON:  It was part of the record.

1          THE COURT:  If it's not related -- if it's not

2  related to the case, what's it doing in the record?

3          MR. MELTON:  Dr. Siddiqui was saying he wasn't

4  being paid enough, that Humble Surgical Hospital wasn't

10:03:02   5  collecting enough from Aetna.

6          THE COURT:  I understand there is a difference

7  of point of view between Aetna and Siddiqui about how it

8  should work.  And, yes, apparently it is a suit based on

9  the same business practice.

10:03:26  10          It's here in Houston; it's not in

11  Connecticut; it's not in New Jersey; it's not in Arizona.

12  It's here.

13          MR. MELTON:  Your Honor, I think that case --

14  that case could not have been brought anywhere else.

10:03:47  15          THE COURT:  I don't know that.  I don't propose

16  to study it enough to learn.  Of course, the Doctors,

17  Blackwell and the other fellow, could have removed it.

18  Could have moved to consolidate him into this one.  They

19  didn't.

10:04:18  20          MR. MELTON:  Your Honor, that -- those

21  decisions -- I mean, those were just filed, I believe, on

22  the 26th, 27th of December.  So I don't know that those

23  doctors were going to --

24          THE COURT:  What, the Aetna's suit against

10:04:32  25  Blackwell?

1          MR. MELTON:  Yes, Your Honor.

2          THE COURT:  You don't have to wait 30 days if

3  you want to remove something, do you?

4          MR. MELTON:  Your Honor, I don't represent the

10:04:42   5  doctors.

6          THE COURT:  I'm sorry.  A hypothetical lawyer

7  does not have to wait 30 days.

8          MR. MELTON:  I believe that's correct.

9          THE COURT:  As soon as he's had time to

10:04:55  10  determine the facts in law support it, he could do it.

11  They haven't -- and they may.  But at the moment they

12  haven't done anything, they have the opportunity.

13              Okay.  What else?

14          MR. MELTON:  Nothing else, Your Honor.

10:05:36  15          MR. SHELY:  Judge, nothing you've heard from

16  Humble should stop you from granting Aetna the relief that

17  we've requested.

18              Everybody knows why Humble filed two

19  separate suites.  Because they wanted to get away from this

10:05:59  20  Court.  Simple as that.  They brought the precise issue to

21  your attention that's at issue in the Connecticut suit.

22  You had two days of hearings; they lost; they decided to go

23  file suit somewhere else.  And while they were at it, they

24  decided to go file a federal ERISA suit or join, attempt to

10:06:20  25  join through motion to intervene in New Jersey.

1    They completely ignore that we've been at

2  this for nearly two years before you.  They completely

3  ignore that they have a pending motion to file a

4  counterclaim which this Court in its case management and

10:06:38  5  discretion can put aside, just as it's put aside some of

6  that -- these other issues, and decide after --

7    THE COURT:  Most of Aetna's other issues.

8    MR. SHELY:  Yes, Judge.  After the accounting

9  is complete.  They know they're in trouble on the motion

10:06:52  10  for judgment.  And here's what's going on, Judge:  Humble,

11  the party Humble, figures they can send in these lawyers,

12  the Judge may yell at them a little bit, but they don't

13  think you'll rule because they've been given last chances

14  before, and the Court has not yet lowered the boom on them.

10:07:10  15    So Humble's strategy could not be clearer.

16  We'll send the lawyers in, take a little heat in Houston,

17  but we will get those other cases out there.  And then we

18  will try to claw back some of what we're losing in front of

19  Judge Hughes in Houston.  Its simple.  Everyone knows that.

10:07:28  20  That's why you can't really get a cogent response to your

21  questions as to why was it filed there, because everybody

22  knows that but Humble can't say that, so this is the time

23  Aetna respectfully suggests Judge, you should enjoin Humble

24  the party, from proceeding in any other action against

10:07:48  25  Aetna in any other form against Aetna, except for before

1  you.   Their cases don't change that.

2                    The motion for judgment is ripe.   The motion

3  for judgment as supplemented by Aetna establishes that

4  Aetna is entitled on the merits to an order showing the

10:08:11   5  amount almost $21 million be awarded it, on the merits that

6  should be awarded, but as an additional sanction for

7  Humble's recalcitrance, which is now more to open defiance

8  of this Court, you should sanction them.   You should, on

9  both grounds, award Aetna the relief that has been

10:08:37   10  requested.

11                    Additionally, if the Court determines based

12  upon Humble's defense such as it is, that its answer should

13  be struck, so be it.   I think that's appropriate here.

14  That's obviously a matter for the Court.   But isn't it

10:08:55   15  interesting, Judge, that they send, Humble sends its

16  lawyers in here to say that these cases are really

17  different.   What they didn't talk about is what the lawyer

18  in New Jersey certified when he filed the motion to

19  intervene.   And he said there are no other actions pending

10:09:12   20  relating to the motion to intervene, except -- and then he

21  lists the Connecticut case, and the case before Your Honor.

22  It's a judicial admission.   Of course they're related.

23  They use the exact same language.

24                    And the idea that they weren't seeking

10:09:30   25  Humble in late November a remedy from you, go look at their

prayer for relief in their motion.  They ask for
everything.  Make them stop, make them pay damages, et
cetera.  Court heard it, Court ruled against them.  And for
the first time they started talking to a lawyer in
Connecticut, right after you ruled against them.

I can't really think of anything much more
blatant than that, that I've seen in civil court.  They
just don't like the way things are going in Houston, their
hometown.  And just as importantly, Judge, they don't think
you'll do anything about it.  You might yell at them, you
might nick them a little bit, but they don't think you'll
grant the relief to end this --

THE COURT:  I haven't really yelled at him, but
I had to get his attention on a couple of occasions.

MR. SHELY:  Yes, Judge, I'm using that as --

THE COURT:  Talk over --

MR. SHELY:  But the point is Humble isn't here.
You know that the officers didn't come here.  They
obviously told the lawyers, Just go fade it, and then we'll
keep going forward.  You shouldn't allow it, Judge.  It's
wrong for the procedure, it's wrong in the case, it's not
fair to Aetna.

And the time has come, and respectfully
suggest for its motion for judgment to be granted for all
the reasons I've set forth.

1                   Thank you.

2              THE COURT:  Mr. Shely, I'm not sure I've ever

3 enjoined one of my colleagues.

4              MR. SHELY:  You do not need to enjoin any

10:10:56   5 judge, Judge.  You just need to tell Humble:  Don't go

6 forward, period.

7              THE COURT:  Indirectly that seems to be saying

8 you've got a case that you can't pursue.  Maybe I have done

9 that.  I don't know.

10:11:09  10              MR. SHELY:  I don't know if you've done it

11 before, Judge.  I also have, you had requested on Monday

12 the presentation that Humble had presented to you on

13 June 4th be placed in the record.  I found it and made a

14 copy of mine.  If you'd like, I'll give that to the clerk.

10:11:24  15              THE COURT:  Has it been filed?

16              MR. SHELY:  It has not, Judge.

17              MR. MELTON:  Your Honor, we brought it.

18              THE COURT:  Since we have two, if I could have

19 one and then we'll send the other one downstairs to be

10:11:37  20 filed as Exhibit A today or something.

21              MR. MELTON:  Do you want to make sure they're

22 the same?

23              MR. SHELY:  I made a copy.  So I recognize,

24 Judge, that I suppose it can be a little sticky, given

10:11:54  25 there's another action and you're being asked to take a

1  step here.  All I can tell you is we didn't cause that.

2  Humble did.  And Humble can go explain to the court --

3              THE COURT:  No.  I guess this morning hadn't

4  had enough coffee and I forgot about enjoining them, but

10:12:09  5  I'm also careful to state colleagues.

6              MR. SHELY:  Sure.  Understood completely.

7              THE COURT:  We need to -- it's a joint

8  enterprise and we get groups both ways.  They get beat up

9  with us, we get beat up with them.  So...

10:12:31  10             MR. SHELY:  I understand, Judge.  And if

11  they're going to file another one, I hope it's Guam or

12  Puerto Rico, and I'll do the removal myself.  But I think

13  my client would prefer to have it end with the two that

14  have been filed.

10:12:44  15             THE COURT:  Anything else, Mr. Melton?

16             MR. MELTON:  Well, Your Honor, the summary

17  judgment motion that he just said was ripe to be granted,

18  we pointed out in the supplemental briefing that we filed

19  that they're seeking summary judgment on cause of action at

10:13:02  20  theory that state law is preempted by ERISA is to grant

21  it would be --

22             THE COURT:  Counsel, the first lawyers, the

23  first Jackson -- the first two sets were both Jackson

24  lawyers?

10:13:19  25             MR. SHELY:  Yes.  It was Mr. Blefeld his

1 colleague Mr. Stowe, and then after the case was sent back

2 by the 5th Circuit, Mr.  Babcock was in for a short period

3 of time.

4           THE COURT:  I actually know all about ERISA

10:13:40   5 preemption.  I am besides duty-bound to follow it, as it

6 rarely happens, we're in total agreement with Congress on

7 the point -- not that that matters to Congress or the

8 litigants because I'll do whatever else Congress says --

9 it's somewhat ironic that Humble wants to claim that in the

10:14:25  10 name of the beneficiaries that these claims are preempted,

11 because I made clear for the last two years, an overpayment

12 is an overpayment.  It's not a new damage.  It's a refund.

13           All that other -- I don't even remember what

14 all the other things they pleaded -- they may all be

10:14:59  15 preempted or just bad to start with, one of the two -- the

16 case here is Humble filed claims on an ERISA claim with

17 Aetna that were wrong, and Aetna paid them, which also

18 makes the New Jersey participation ironic.  Aetna's problem

19 is not that it has illegally denied payment.  It's

10:15:40  20 overpaid.  It's not preempted.  If Humble takes a gun to

21 the treasurer of Aetna and says, Give me a hundred thousand

22 dollars or I'll kill you, and he does, the suit to recover

23 that is not preempted.

24           MR. MELTON:  Your Honor, under ERISA, the only

10:16:10  25 way to tell is to look at the actual plan between Aetna and

1  the insured, see what it says they contracted for, and then

2  apply it to the procedures claims that were submitted.

3  That's not now how their summary judgment brief worded it,

4  and to grant it the way they've worded it, they've done

5  this, would be wrong.  That is --

6          THE COURT:  And so, if you claim you did an

7  appendectomy and you send them a bill for an appendectomy

8  and you haven't done an appendectomy, but appendectomies

9  are covered, Aetna does not have to pay because the bill

10  says appendectomy and the plan says appendectomy.  I'm only

11  obliged to pay an honest bill.

12          MR. MELTON:  Your Honor, that's -- those

13  allegations haven't been made, so that's not what's in

14  front of the Court.  All the medical necessity has not been

15  challenged.  They're saying they paid more than they should

16  have.  The only way we can tell what they should have paid

17  is to look at the plans, and that's not what their summary

18  judgment motion is based upon.

19          THE COURT:  So you can lie about having

20  collected the copay, collected deductibles --

21          MR. MELTON:  No.  Either --

22          THE COURT:  You weren't, no.  Humble was.

23          MR. MELTON:  No, Your Honor.

24          THE COURT:  Counsel, after ten months of my

25  badgering, we finally got the financial records that

1   showed -- I don't remember the percentage -- but it was a

2   remarkably small percentage copays and deductibles.

3            MR. SHELY:  Yes, Judge.  They stipulated that

4   they collected less than ten percent of what they should

10:18:05   5   have.  They had to.  They did it on the sample size because

6   those were the facts.

7            THE COURT:  And you want to reargue the

8   stipulation?

9            MR. MELTON:  No, Your Honor.

10:18:17   10            THE COURT:  Well, then that's --

11            MR. MELTON:  That's because it progressively

12   got better over time.  They didn't stipulate that they were

13   lying about copays and deductibles.

14            THE COURT:  They were obliged to collect it.

10:18:33   15   That's part of the deal.  Just like they're obliged

16   honestly to bill.  An honest billing doesn't include

17   kickbacks for doctors.

18            MR. MELTON:  Your Honor, obviously, the

19   characterization of kickbacks to doctors is --

10:18:49   20            THE COURT:  I don't want your view of my

21   characterization.  We've been through that.  We've also

22   been through your attempt to redact from the record of the

23   hearings in this court any characterization of mine that

24   you disprove of.

10:19:04   25            MR. MELTON:  That's not correct, Your Honor.

1    THE COURT:  Are you calling me a liar?

2    MR. MELTON:  Your Honor --

3    THE COURT:  I'm just reversing it.

4    MR. MELTON:  We attempted to protect what we

10:19:17   5 viewed as the trade secrets --

6    THE COURT:  I know what you've called it.  I do

7 not think in 34 and a half years -- no.  34 years -- I've

8 ever had anybody move to redact my views of the case as it

9 progresses, unless it was a minor case when I used the

10:19:39   10 minor's name.

11    Mr. Melton, that may be the strangest

12 episode in what is a rather strange case, where Humble

13 thinks it can redact anything that discusses the nature of

14 the lawsuit for all practical purposes.

10:20:10   15    MR. MELTON:  Your Honor, those redactions were

16 narrowly tailored just on the internal functioning of how a

17 surgical hospital works.  They're using our allegations to

18 hand them over to CIGNA to then sue us again.  We're trying

19 to prevent --

10:20:25   20    THE COURT:  Counsel, counsel, I printed the

21 first hundred pages and went through them.  I read through

22 a nonrandom selection that I did very quickly before the

23 other hearing.  CIGNA can't base a lawsuit on any of those.

24 And there's another hundred pages of the transcript.  Do

10:20:55   25 you want me to read the other hundred pages and give you

1 some more examples?

2                MR. MELTON:  Your Honor, I think before

3 denying -- you've treated it as a motion and --

4                THE COURT:  That has to be.  I'm not going to

10:21:12  5 redact it without a motion.  Do you want to withdraw it?

6                MR. MELTON:  No, Your Honor.

7                THE COURT:  All right.  I've got to do

8 something about with it, Mr. Melton.

9                MR. MELTON:  You've denied it, Judge.

10:21:24 10                THE COURT:  You say I treated it like a motion,

11 like that was some procedural irregularity.  You asked me

12 to do something.  That's called a motion.

13                MR. MELTON:  That is what you did, Your Honor.

14 You treated it as a motion, and you denied it.

10:21:40 15                THE COURT:  But it was a motion; right?

16                MR. MELTON:  Well, under the protective order,

17 it set forth ways for us to go about it, and we thought we

18 did it.  It didn't say it would be treated as -- you

19 treated it as -- we haven't said that you did anything

10:21:56 20 wrong in treating it as a motion.

21                THE COURT:  "Motion" is just a fancy lawyer

22 word for request.

23                MR. MELTON:  Your Honor, Mr. Ross --

24                MR. ROSS:  I actually was involved in that.

10:22:12 25 May I address the Court?

1                THE COURT:  Yes, sir, of course.

2                MR. ROSS:  I understand we have an agreement

3    under what we did submit, and of course we submitted it as

4    something we wanted done.  It's a motion.  You denied it.

10:22:23    5    You looked about half of the transcript, and you found

6    examples that you felt shouldn't have been redacted.  I get

7    that.  That's the Court's prerogative to make that

8    determination.

9                Any fair reading of what we did not redact,

10:22:39    10    I believe any objective observer will understand the

11    Court's view of this case and the Court's view of my

12    client.  We were not going through and saying, Oh, Judge

13    Hughes expressed his disdain about Humble.  Let's try to

14    redact that.  That was not my point.

10:22:54    15                THE COURT:  I'm sorry.  I did not mean to imply

16    that.  Those, the characterizations, were of business

17    practices, as I recall.

18                MR. ROSS:  They were.

19                THE COURT:  But I didn't find anything

10:23:14    20    particularly revealing about business practices.  But all

21    of which is sort of moot anyway because the contracts are

22    in the record now here and over on Caroline now.  And I'm

23    happy to read the other -- or "happy" is an exaggeration --

24    I will read the other hundred pages if you think that the

10:23:39    25    first hundred were not a fair reading.

1          MR. ROSS:  Each redaction stands on its own.
2  Yes, I think it would be good for the record for you to
3  review, and if you find, as you did for the first hundred
4  pages, that none of those redactions are appropriate, then
10:23:56  5  we stand by that.  But that was the purpose.  I don't want
6  to leave anything in the record unclear about it was not
7  about, you know, Judge Hughes doesn't like our client, so
8  we're going to redact those parts.  It just wasn't that
9  way.

10:24:11  10          THE COURT:  And I don't dislike the clients.  I
11  just have a job to do.  But, of course, the whole
12  publication is an order of mine which I can adjust and
13  it -- I'll read that.  I'm not going to catalog all of
14  them.  There are too many, and there are too many things.

10:24:41  15          MR. ROSS:  We don't expect some long written
16  order about each one and everything.

17          THE COURT:  I will look and see if my original
18  inspection is confirmed.

19          MR. ROSS:  Thank you, Your Honor.

10:24:51  20          THE COURT:  Yes, sir.

21            All right.  Anything else?

22          MR. MELTON:  No, Your Honor.

23          THE COURT:  Now, I feel bad that Ms. Downey
24  hasn't gotten to talk.  Good morning.

10:25:11  25          MS. DOWNEY:  Good morning, Your Honor.  How are

1  you, Your Honor?

2           THE COURT:  Thank you.  But since only Shely

3  has talked, I don't have to do that with them.

4               Mr. Shely, anything else?

10:25:29    5           MR. SHELY:  No, Judge.  The only other thing I

6  would add is obviously you've got all the briefing on the

7  judgment.  You've read it in great detail.

8               One last thing, though.  Isn't it

9  interesting, consistent with this case, Humble, at the end

10:25:43   10  of the day, blames this Court and Aetna for its problems.

11  All it had to do was comply with this Court's orders.  It

12  hasn't done it.  It's chosen to go off on a rogue mission

13  to follow their suits.  And we're asking that the Court

14  enter the appropriate orders to stop it, and grant Aetna

10:25:59   15  its judgment.  It's ripe.  They agree it's ripe for

16  decision, and respectfully should be decided.

17           THE COURT:  All right.  Thank you, counsel.

18               **(Recessed at 10:26 a.m.)**

19               **COURT REPORTER'S CERTIFICATE**

20  I, Johnny C. Sanchez, certify that the foregoing is a

21  correct transcript from the record of proceedings in the

22  above-entitled matter.

23

24               /s/_____
                 Johnny C. Sanchez, CRR, RMR

25

*Johnny C. Sanchez, RMR, CRR - jcscourtreporter@aol.com*