IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AETNA LIFE INSURANCE CO., § | | JURY DEMANDED |
| *Plaintiff*, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. 4:12-CV-1206 |
| § | | |
| HUMBLE SURGICAL HOSPITAL, LLC § | | |
| *Defendant*. § | | |

# DEFENDANT'S FIRST AMENDED COUNTERCLAIMS

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant, HUMBLE SURGICAL CENTER, LLC, files these First Amended Counterclaims complaining of AETNA LIFE INSURANCE COMPANY, and would respectfully show the Court the following:

## I. PARTIES

1. Counter-Plaintiff/Defendant, Humble Surgical Center LLC ("HSH"), is a Texas limited liability company doing business in Harris County, Texas, and is the lawful assignee of all the counterclaims asserted herein.

2. Counter-Defendant/Plaintiff Aetna Life Insurance Company ("Aetna") is a corporation organized under the laws of the State of Connecticut with its principal place of business in the State of Connecticut. Aetna has already appeared in this action.

## II. JURISDICTION AND VENUE

3. This Court has personal jurisdiction over Aetna, which conducts substantial business in Texas and a substantial part of the events or omissions giving rise to the counterclaims occurred here. Aetna has already appeared in this action and consented to the Court's jurisdiction.

4. The Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. §§1001, *et seq*., Employment Retirement Income Security Act ("ERISA"), as HSH's claims in part arise under ERISA.

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because this is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because it arises under the Constitution, law or treaties of the United States.

7. The Court also has subject matter jurisdiction over the state law causes of action pursuant to 28 U.S.C. §1367, because the Court has original the state law claims are so related to other claims in the action that they form part of the same case or controversy.

8. Venue is proper in the Southern District of Texas pursuant to 29 U.S.C. §1391(b)(2) because the events or omissions giving rise to the counterclaims occurred here.

### III. INTRODUCTION

9. HSH asserts counterclaims arising out of federal law, including ERISA, as well as applicable state law. HSH brings this action pursuant to healthcare plans directly insured and/or administered by Aetna. The plans at issue permit subscribers to obtain healthcare services from facilities such as HSH that have not entered into contracts with Aetna (referred to as "out-of-network," "non-participating" or "non-par" providers). Aetna is required under the terms of its healthcare contracts to pay benefits promptly for such out-of-network services based on the particular Aetna Plan and/or policy.

10. Generally, a patient's healthcare benefit plan is governed by the applicable provisions of ERISA, 29 U.S.C. §§1001, *et seq*. The patients' ERISA health plan is interpreted by the plan

administrator, which is the employer and not by a third-party administrator such as Aetna, unless such authority has been delegated or assigned to Aetna by the Plan Sponsor. In some of the Plans at issue herein, there is no "Discretionary Authority" provision which means that Aetna cannot lawfully interpret the provisions of the Plans. The employee member pays a part of the cost of the insurance. The Plan provides the employee member certain benefits, which includes the right to go to a doctor or facility of her choice to treat an illness and to obtain reimbursement.

11. With regard to all Aetna beneficiaries, members and subscribers, HSH requires that they sign documents whereby the employee member or subscriber agrees to be personally responsible for all of HSH's charges. As a part of these documents, HSH obtains an Assignment of Benefits that makes HSH the beneficiary of the ERISA plans and the non-ERISA contracts. HSH does not waive a deductible or co-payment by the acceptance of the Assignment. Because of this Assignment of Benefits, HSH also has standing to sue Aetna under all insured contracts.

## IV. FACTS

12. Aetna intentionally or recklessly underpaid HSH for claims and services provided by HSH to Aetna's insureds. Additionally, Aetna failed to pay these claims promptly. HSH was significantly underpaid, or in some instances paid nothing at all, by Aetna, contradicting the healthcare plans of its subscriber patients. Aetna significantly underpaid claims to HSH solely for Aetna's financial benefit, and Aetna's failure to pay what it was obligated to resulted in a direct financial benefit to Aetna and resulting damages to HSH.

13. Aetna engaged in negotiations with HSH as to the reasonable amount due on many of the claims that are now the subject of Aetna's lawsuit against HSH. As a result of these negotiations, Aetna and HSH agreed on the amount that Aetna would pay HSH, and Aetna paid those amounts pursuant to the terms of the settlement agreements it negotiated. Aetna paid HSH's disputed claims

with full knowledge of the facts and circumstances of each claim. Aetna now wrongfully attempts to recover part of the negotiated and settled claims in breach of those agreements.

14. In addition, for many of the claims that are now the subject of Aetna's lawsuit, Aetna and HSH engaged in negotiations before any healthcare services were performed or billed. In some of those situations, Aetna and HSH reached an agreement for the cost of the services before the services were provided, and Aetna paid the agreed upon amount that HSH would receive for performing these services. Aetna now wrongfully attempts to recover part of the amount it paid for those negotiated and settled claims, in breach of the agreements it made.

15. Additionally, Aetna hired a third-party, Global Claims Services ("GCS"), to negotiate HSH's claims for services provided to Aetna's insureds. Upon information and belief, Aetna established certain parameters that applied to "negotiators" at GCS when negotiating the payment of HSH's services that required those GCS "negotiators" to negotiate a low percentage of HSH's charges, regardless of what Aetna's plan documents required. "Negotiators" were paid incentives based on how low a payment was negotiated. Aetna paid HSH's disputed claims with full knowledge of the facts and circumstances of each claim. Aetna now wrongfully attempts to recover part of the negotiated and settled claims in breach of those agreements.

16. On information and believe, Aetna stands to benefit from not only paying HSH claims at a high rate, but also benefits in instances like this case where it has sued for repayment of previously processed claims and this tactic of coercion and litigation is solely for Aetna's financial benefit.

17. In situations where Aetna does not directly insure group health plans, it functions as the third party "plan administrator" as that term is defined under ERISA, and thus assumes all obligations imposed by ERISA on such plan administrators. In situations where Aetna may not be appointed as plan administrator or directly insure group plans, Aetna is equitably estopped from

4

denying it is a plan administrator due to its material misrepresentations, which HSH reasonably relied upon to its detriment and the extraordinary circumstances imposed by Aetna.

18. Aetna also functions as a fiduciary for self-funded health plans and has fiduciary duties under ERISA. At times, Aetna exercises discretionary control in its interactions with self-funded health plans and their subscribers, pursuant to rights granted by the Plan Sponsor.

19. Aetna also entered into Administrative Service Only (ASO) Agreements or similarly named agreements, pursuant to which Aetna administers those Plan Sponsors' self-funded health benefit plans. Under some ASO Agreements, Plan Sponsors delegate responsibilities and authority over self-funded plans to Aetna. These responsibilities include determining eligibility and enrollment for coverage under the Plan according to the information provided by the Employer, making factual determinations to interpret the provisions of the Plan to make coverage determinations on claims for Plan Benefits, conducting a full and fair review of each claim which has been denied, and conducting both mandatory levels of appeal determinations for all Concurrent, Pre-service and Post-service claims and notifying the Member or the Member's authorized representatives of its decision. Most of these obligations are required of the plan administrator by the applicable provisions of ERISA.

20. The foregoing contractual provisions, as well as HSH's dealings with Aetna as described herein, demonstrate that Aetna exercises discretionary authority and/or discretionary control over the self-funded health benefit plans that Aetna administers, and the assets of the self-funded health benefit plans that Aetna administers (both of which the Plan Sponsors, with whom Aetna contracts, have unequivocally yielded to Aetna).

21. In connection with Aetna's claims against HSH, Aetna's position is that it has made claim determinations without valid or appropriate data and/or reasons to support payments. If that is true,

Aetna violated its fiduciary obligations under ERISA as well as disclosure and other statutory obligations.

22. When Aetna insures a plan directly, as well as when it exercises discretionary authority or control, Aetna is an ERISA fiduciary. Aetna therefore owes fiduciary duties to all members and subscribers in its ERISA plans and also to HSH as a beneficiary and assignee of the Assignment of Benefits signed by Aetna's members/subscribers who receive services at HSH.

### A. *Wrongful Claims Determination*

23. In Spring 2012, Aetna intentionally targeted HSH by "blacklisting" HSH from payment procedures. Aetna contacted member-insureds, as well as doctors, and informed them that Aetna would cease to cover procedures done at HSH, even as an out-of-network facility. Also, during this time period, Aetna substantially increased the medical records requests in order to intentionally "stall" payments. In numerous appeals made therefrom, Aetna has systematically failed to respond and produce copies of the requested plans and/or policies. Aetna also started paying substantially less on all HSH claims, or utterly failed to pay anything at all and as of October 25th 2013, Aetna made a unilateral determination that it would not cover any HSH claims, yet Aetna would still verify benefits for patients seeking services with HSH..

24. Aetna's failure to pay, or threats not to pay, HSH for healthcare services rendered to Aetna insureds are acts of coercion and intimidation. The practice of intentionally under-paying out-of-network providers is nothing new to Aetna or to entities, like Ingenix, that have assisted Aetna with regard to payment of claims in the past. Because it was a database that had the effect of allowing Aetna and others to systematically "stick consumers with billions of dollars that the insurance industry should have been paying," Ingenix was forced to close down the database See Hearing

before the United States Senate Committee on Commerce, Science and Transportation, S. Hrg. 11-37, Part 2 (March 31, 2009).

## B.     *Failure to provide documents*

26. The civil enforcement section of ERISA, particularly 502(c), codified at 29 U.S.C. §1132(c)(1)(B) provides that a participant or beneficiary is entitled to request claims rejection information from the administrator. If the administrator does not provide the information within 30 days, the administrator may be liable for up to $100 a day, per claim.

26. HSH has requested from Aetna both plan and plan associated documents on claims made by HSH. Aetna has refused and continues to refuse to provide those documents. HSH is entitled to the requested plan documents and associated documents. HSH is also entitled to a civil penalty of $100 per day for failure to timely comply with the request under 29 U.S.C. § 1132(c), until the documents are produced.

## C.     *Defamation and Tortious Interference with Existing and Prospective Contracts*

27. During the pendency of this lawsuit, to comply with discovery requests and the Court's orders regarding the production of documents, HSH produced a number of confidential and proprietary documents designated as "Restricted" or "Attorney's Eyes Only." In spite of and in violation of a Protective Order issued by the Court, Aetna is using the confidential information produced in this lawsuit, and solely for the purpose of that lawsuit, to fuel a business plan to destroy HSH's reputation and its relationships with its physicians and patients. Aetna is communicating false and misleading information about HSH to its physicians, investors, potential investors, potential physicians, patients and potential patients. Particularly Aetna is misrepresenting that HSH's Participation Agreements are illegal, improper and unethical, which HSH denies. Nevertheless, Aetna continues to make those assertions as if the assertions were proven. HSH is

aware of at least a dozen patients who have cancelled scheduled surgeries at HSH as a result of receiving this defamatory information from Aetna, and potential investors and referring physicians who have ended discussions with HSH based upon Aetna's statements.

28. Due to Aetna's actions, HSH has suffered and is continuing to suffer a loss of business and professional reputation in the community where it operates.

### D. *Aetna publishes defaming statements to HSH's patients and potential patients*

29. HSH has learned that Aetna sent notices to Aetna insureds informing them that Aetna will deny all claims submitted for procedures performed at HSH after October 25, 2013. Aetna also posted a notice with similar information to its insureds on Aetna's website. Aetna falsely alleges that HSH submitted false and misleading claims. Additionally, Aetna falsely alleges that HSH entered into improper agreements with physicians.

30. HSH has also learned that Aetna is contacting patients scheduled to have procedures at HSH to inform them Aetna will not pay for procedures performed at HSH and that they should re-schedule surgeries at a different facility. One such patient who had previously had a surgery at HSH wished to have an additional surgery there. Aetna contacted the patient and told her Aetna would not cover the procedure at HSH. Even though the patient's plan allows for out-of-network coverage, and Aetna is being paid to provide out-of-network coverage. Aetna is forcing her to have the procedure performed at an in-network facility. Further, her out-of-network deductible is already met.

31. Aetna's misleading and false communications is alienating HSH's patients and causing patients to cancel procedures at HSH. Patients have canceled procedures at HSH due to Aetna's intentional communications.

*E.     Aetna publishes defaming statements to HSH's physicians*

32.     HSH has learned that Aetna is communicating false, misleading and defamatory statements to physicians that practice at HSH. HSH has sent a letter to physicians with Participation Agreements at HSH. Aetna falsely alleges that HSH entered into "illegal, improper, and unethical" agreements with physicians. Aetna's letter falsely accuses HSH of violating Texas law.

33.     In fact, Aetna's communications wrongfully terminate its agreements with physicians for practicing at HSH. HSH began fielding calls from numerous physicians who received these untruthful communications.

## V.     CAUSES OF ACTION

*A.     Aetna's Failure to Comply with Group Plans in Violation of ERISA*

34.     HSH incorporates by reference the preceding paragraphs.

35.     HSH is entitled to enforce the terms of the plans, as assignee of directly insured subscribers/members under 29 U.S.C. §1132(a)(1)(B), for whom Aetna has made claims determinations without valid data and/or has done so in an arbitrary fashion, and to obtain appropriate relief under such provision. Under §502(a) of ERISA, HSH (as beneficiary and assignee) is entitled to recover benefits due to HSH and/or the patients from whom HSH received Assignments of Benefits, under the terms of the plans between the patients and Aetna.

36.     Aetna acted as a fiduciary to its beneficiaries, including HSH as assignee, because Aetna exercised discretion in determining whether plan benefits would be paid, and/or the amounts of plan benefits that would be paid, to those plan beneficiaries. As a fiduciary under ERISA, Aetna is subject to a civil action under §502(a) of ERISA. In violation of ERISA, Aetna failed to make payments of benefits to HSH as assignee, as required under the terms of the plans between the patients and Aetna. In further violation of ERISA, Aetna failed to provide HSH as assignee with all rights under the terms of the plan between the patients and Aetna, as required by ERISA. Aetna

9

failed to make clear to HSH as assignee its rights to future benefits under the terms of the plans between the patients and Aetna, as required by ERISA.

37. Aetna breached the terms of the plans, by making claims determinations that had the effect of reimbursing less than the stated percentage of their provider's actual charges without valid evidence or information to substantiate such determinations and/or in an arbitrary fashion.

38. As a proximate result of Aetna's wrongful acts, HSH has been damaged in the amount in excess of the jurisdictional limits of this Court.

### B. *Aetna's Breach of Fiduciary Duties under ERISA*

39. HSH incorporates by reference the preceding paragraphs.

40. HSH, as the assignee of ERISA subscribers/members, is entitled to assert a claim for relief under Aetna's breach of the fiduciary duties of loyalty and care under 29 U.S.C. §1132(a)(3).

41. Aetna acted as "fiduciary" to HSH as an assignee in connection with the beneficiaries' group health plans, as such term is understood under ERISA §3(21)(A), 29 U.S.C. §1002(21)(A). In its capacity as the insurer, plan administrator, claims administrator and/or fiduciary of ERISA group plans, Aetna is a fiduciary or equitably estopped from denying its fiduciary status. Nichols v. Alcatel USA, Inc., 532 F.3d 364, 374 (5th Cir. 2008)(citing Mello v. Sarah Lee Corp., 431 F.3d 440, 444-45 (5th Cir. 2005).

42. Aetna breached its duties to HSH as assignee by underpaying claims without valid data or evidence to substantiate the amount paid, and/or doing so in an arbitrary fashion, by omitting material information about its determinations from HSH and/or by making misrepresentations about its claims determinations. Specifically, Aetna acted as fiduciary to HSH as assignee because Aetna exercised discretion in determining whether plan benefits would be paid, and/or the amounts of plan benefits that would be paid, to those plan beneficiaries. Further, Aetna required HSH deal

only with Aetna regarding plan-related questions and for copies of the plans themselves. The exercise of discretion in such determinations of plan benefits is an inherently fiduciary function that must be carried out in accordance with the terms of the plan, not in a manner to maximize profit to Aetna by paying lesser amounts to HSH.

43. By engaging in the conduct described above, Aetna failed to act with the care, skill, prudence and diligence that a prudent plan administrator would use in the conduct of an enterprise of like character or to act in accordance with the documents and instruments governing the plan. Fiduciaries must ensure that they are acting in accordance with the documents and instruments governing the plan. ERISA §§404(a)(1)(B) and (D), 29 U.S.C. §§1104(a)(1)(B) and (D).

44. Aetna violated its fiduciary duty of care by, among other things, determining whether plan benefits would be paid, and/or determining the amounts of plan benefits that would be paid, to those plan beneficiaries based on maximizing profit to Aetna, rather than based on the terms of the plans and applicable statutes and regulations.

45. As a fiduciary of group health plans under ERISA, Aetna owes beneficiaries a duty of loyalty, defined as an obligation to make decisions in the interest of beneficiaries, and to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of beneficiaries. Aetna cannot, for example, make benefit determinations for the purpose of maximizing profit to Aetna at the expense of beneficiaries.

46. Aetna violated its fiduciary duty of loyalty by, among other things, determining whether plan benefits would be paid, and/or determining the amounts of plan benefits that would be paid, to those plan beneficiaries based on maximizing profit to Aetna, rather than based on the terms of the plans and applicable statutes and regulations.

47. HSH is entitled to relief for Aetna's violation of its fiduciary duties under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), including restitution, injunctive and declaratory relief, and its removal as a breaching fiduciary.

48. As a direct and proximate cause of Aetna's ERISA breaches, HSH has been and continues to be damaged in an amount in excess of the jurisdictional limits of the Court.

### C. *Aetna's Failure to Provide Full and Fair Review Under ERISA*

49. HSH incorporates by reference the preceding paragraphs.

50. Aetna functions as the "plan administrator" within the meaning of such terms under ERISA when it insures a group health plan, or when it is designated as a plan administrator for such plan. As such, HSH is entitled to assert a claim for relief under 29 U.S.C. §1132(a)(3).

51. Although Aetna was obligated to provide a "full and fair review" of all claims, it failed to do so in connection with claims paid to HSH, and otherwise failed to make necessary disclosures pursuant to 29 U.S.C. § 1133 (and its regulations).

52. HSH was proximately harmed by Aetna's failure to comply with 29 U.S.C. § 1133 and has been damaged in an amount in excess of the jurisdictional limits of the Court.

### D. *Aetna's Violations of Claims Procedure Under ERISA*

53. HSH incorporates by reference the preceding paragraphs.

54. Aetna is an insurance company that is subject to regulation under the insurance laws of more than one state, including the State of Texas. Further, Aetna processes benefit claims for self-funded plans providing claims filing and notices of decisions to policyholders in such plans.

55. Aetna is an insurance company and must comply with claims procedures defined by law (e.g., 29 CFR § 2560.503-1) for subscribers and members. HSH is therefore entitled to seek additional relief if an insurance company failed to comply with federal law. 29 U.S.C. §1132(a)(3).

56. Aetna violated these claims procedure regulations by engaging in conduct that rendered its claims procedures and appeals process unfair to subscribers and their assignee.

57. As a proximate result of its violation of such regulations, HSH has been harmed in an amount in excess of the jurisdictional limits of this Court.

### E. *Violations of the Texas Insurance Code*

58. HSH incorporates by reference the preceding paragraphs.

59. The acts and omissions also constitute violations of Texas common law and the Texas Insurance Code. By arbitrarily delaying and failing to timely pay claims, Aetna is in violation of the Texas Prompt Pay Statute, TEX. INS. CODE §542.058, among other sections. Further, the acts and omission constitute an illegal boycott or an act of coercion in violation of TEX. INS. CODE §541.003, as an act of unfair competition within the state of Texas. *See also*, TEX. INS. CODE §541.054.

60. As a proximate result of its violations of such regulations and laws, HSH has been harmed in an amount in excess of the jurisdictional limits of this Court.

### F. *Breach of Contract*

61. HSH incorporates by reference the preceding paragraphs.

62. Aetna is liable to HSH for breaches of contracts with its insureds.

In addition, Aetna is liable to HSH for breaches of contracts with HSH. Aetna individually and through its agent, GCS, negotiated and contracted with HSH to determine and finalize claims. HSH performed services and incurred debts in reliance upon these agreements with Aetna. Aetna plan participants, also being HSH patients, received the benefits of the medical supplies and procedures.

13

Aetna now seeks to renege on these finalized contracts and improperly seeks to recover payments that were properly made.

### G. *Failure to Provide Information*

63. HSH incorporates by reference the preceding paragraphs.

64. Aetna's failure to comply with the request for information pursuant to 29 U.S.C. §1132(c)(1)(B) provides a civil penalty in the amount of up to $100 per day for such failure or refusal to provide the requested documents. HSH has been prejudiced by Aetna's actions, as such, HSH is entitled to the requested documents and to the $100 per day civil penalty. See Godwin v. Sun Life Assurance Co., 980 F.2d 323, 327 (5th Cir. 1992)

### H. *Defamation*

65. The allegations contained in the paragraphs above are incorporated and restated herein.

67. Aetna intentionally published communications to HSH's patients filled with false statements and misrepresentations constituting libel and defamation. Aetna intentionally published communications to potential patients for HSH filled with false statements and misrepresentations constituting libel and defamation. Aetna intentionally published a letter to HSH's physicians and business partners filled with false statements and misrepresentations constituting libel and defamation.

68. Aetna's communications referred to HSH by name. Each of the statements was false and unprivileged and exposed HSH to distrust, hatred, and contempt and caused HSH to lose business. The same is true of the communications when viewed in whole. The implication of the letter is that HSH is unethical and acting illegally.

69. Aetna made these statements with knowledge or reckless disregard of the falsity of the matter and at minimum made them negligently all with regard to HSH.

70. The natural and proximate consequence of these statements necessarily caused injury to HSH in its business.

71. Alternatively, the wrong and injuries are presumed or implied, and such publications are defamation *per se*, because they accused HSH of, amongst other things, committing a crime. HSH demands judgment against Aetna for damages, including lost profits in the past and future, loss of reputation in the past and future, prejudgment and post-judgment interest and taxable costs.

## I. *Business Disparagement*

72. The allegations contained in the paragraphs above are incorporated and restated herein.

73. Aetna intentionally published communications to HSH's patients filled with false statements and misrepresentations constituting disparagement.

74. Aetna intentionally published communications to potential patients for HSH filled with false statements and misrepresentations constituting disparagement. Aetna intentionally published a letter to HSH's physicians and business partners filled with false statements and misrepresentations constituting disparagement.

75. Each of the statements was false and unprivileged and exposed HSH to distrust, hatred, and contempt and caused HSH to lose business. The same is true when the communications are viewed in whole. The implication of the letter is that HSH is unethical and acting illegally.

76. Aetna made these statements with knowledge or reckless disregard of the falsity of the matter and at minimum made them negligently all with regard to HSH.

77. The natural and proximate consequence of these statements necessarily caused injury to HSH in its business. Aetna's communications constitute business disparagement and caused special damages.

### J.     Tortious Interference with Existing Contracts

78.     HSH incorporates by reference the preceding paragraphs.

79.     Aetna intentionally interfered with the Participation Agreements between HSH and the physician entities by releasing the letters described above.  Aetna's interference was intentional, because it was committed with the desire to interfere with the contract between HSH and the physicians' entities, or Aetna believed that the interference was substantially certain to result.  In fact, after Aetna published these letters to the physician entities physicians withdrew or repudiated their Participation Agreements with HSH.  The letters are false and defamatory as described above, and the release of these letters to the physicians was the proximate cause of damages to HSH, including, at a minimum, lost profits.  Aetna's actions were not only damaging to HSH, but have an anti-competitive impact on the Healthcare marketplace by intimidating physicians and in many cases cutting them from their network Aetna is using underhanded tactics to bully physicians and other providers into accepting its below market contract rates.

### K.     Interference With Prospective Contracts

80.     Additionally, Aetna's letters and posts have made it into the hands of physicians and patients that were actively engaged in entering into a contractual relationship with HSH, either as an investor in HSH, a potential source of referrals through a Participation Agreement, or a potential patient having a case performed at HSH.  In all reasonable probability these groups of individuals would have entered into a contractual or business relationship with HSH in the absence of Aetna's actions.  Aetna's statements are independently tortious or unlawful acts that were a substantial factor in preventing the contractual or business relationship from occurring, and Aetna acted with a conscious desire to prevent HSH from entering into a contractual or business relationship, or Aetna knew that the interference was certain or substantially certain to occur as a result of its conduct.

Finally, HSH suffered actual harm or damage in the form of lost profits and lost business opportunities as a result of Aetna's interference.

## L. *Request for Declaratory Judgment*

81. HSH incorporates by reference the preceding paragraphs.

82. Pursuant to 28 U.S.C. §2201 and Chapter 37, TEX. CIV. PRAC. & REM. CODE, HSH seeks a declaratory judgment from this Court that:

> a. HSH properly submitted all claims for reimbursement of healthcare benefits to Aetna at any time in compliance with all state and federal laws;
>
> b. HSH did not engage in any acts of fraud or misrepresentation in their collective attempts to recover healthcare benefits from Aetna at any time;
>
> c. HSH billed Aetna at the usual, customary and reasonable rate and/or the Maximum Reimbursable Charge for healthcare services rendered to Aetna's insured members/participants at any time;
>
> d. HSH, as beneficiary of its patient's claims, is entitled to be fully reimbursed by Aetna for billed charges. In the alternative HSH is entitled to be fully reimbursed at the usual, customary and reasonable rate and/or the Maximum Reimbursable Charge for all healthcare claims made by HSH, as set forth in Aetna's applicable plans and/or policies;
>
> e. Aetna failed to comply with HSH's requests for information pursuant to 29 U.S.C. §1132 (c)(1)(B) and has violated the statutory requirements for compliant responses to these requests.
>
> f. All HSH healthcare claims negotiated or settled by or through Aetna or its agent GCS are final.

## VI. ATTORNEY'S FEES

83. Pursuant to TEX. CIV. PRAC. & REM. CODE §37.009, 28 U.S.C. §201, and 29 U.S.C. §1132, HSH seeks to recover its costs and all reasonable and necessary attorneys' fees as are equitable and just in the litigation of this matter, which will be in an amount in excess of the jurisdictional limits of the court.

## VII. DAMAGES

84. For these reasons, HSH asks for judgment against Aetna Life Insurance Company for damages, including lost profits in the past and future; loss of reputation in the past and future; payment of all fees recoverable for the services it provided, and to which it shows itself entitled, which will exceed $15 million; attorneys' fees; both pre-judgment and post-judgment interest at the highest rates allowed by law; taxable costs; the entry of an Order requiring Aetna to produce the requested plan and associated documents; declaratory relief as requested; all relief pursuant to Rule 54(c), FED. R. CIV. P.; and such other and further relief to which they may show themselves justly entitled.

Respectfully submitted,

BATEMAN | PUGH | CHAMBERS

By: */s/ Robert H. Bateman*
    ROBERT H. BATEMAN
       SBOT #01899500, FBN: 7171
    ADAM B. CHAMBERS
       SBOT #24036345, FBN: 602418
    1811 Bering Drive, Suite 420
    Houston, Texas 77057
    Phone: (713) 609-7700
    Fax: (713) 609-7777
    rhb@bpattorneys.com
    abc@bpattorneys.com
***COUNSEL FOR DEFENDANT***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed sent to all counsel of record by hand delivery, facsimile, electronic filing and/or by certified mail, return receipt requested on the 1st day of April, 2015.

*Via Facsimile: (713) 220-4285*
Mr. John B. Shely
ANDREWS KURTH, LLP
600 Travis, Suite 4200
Houston, TX 77002
*Attorneys for Plaintiff*

       */s/ Robert H. Bateman*
ROBERT H. BATEMAN